05 CV 9791

Ralph M. Stone (RS-4488)
SHALOV STONE & BONNER LLP
485 Seventh Avenue, Suite 1000
New York, New York 10018
(212) 239-4340
Fax (212) 239-4310

[Additional counsel listed on signature page]

*Attorneys for Plaintiffs*



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| JOHN SCHNELLER, NEAL GOLDMAN, ENDEAVOR ASSET MANAGEMENT, L.P., BRAD BUTLER in his capacity as TRUSTEE OF THE AMERICAN HIGH GROWTH EQUITIES RETIREMENT TRUST, LARISSA FRIEDENBERG, JAMES IRVINE, and EDWARD NEWMAN, <br><br> Plaintiffs, <br><br> v. <br><br> ROGER W. ACH, II, MYLES S. CAIRNS, CAROL A. MEINHARDT, THOMAS C. JOSEPH, RICHARD O. COLEMAN, GEORGE R. BLAKE, EDWARD J. VONDERBRINK, GEORGE M. VREDVELD, CHICAGO WEST PULLMAN, LLC and GAMES, INC. <br><br> Defendants. | Docket No. |

## COMPLAINT

Plaintiffs John Schneller, Neal Goldman, Endeavor Asset Management, L.P.

("Endeavor"), Brad Butler in his capacity as Trustee of the American High Growth

Equities Retirement Trust, Larissa Friedenberg, James Irvine, and Edward Newman complain as follows:

## INTRODUCTION

1.     This is an action to recover full restitution and repayment of Plaintiffs' investment in Defendant Games, Inc. ("Games" or the "Company"), which Defendants induced Plaintiffs to make by issuing a false and misleading Confidential Offering Memorandum and Prospectus.  Defendants represented to Plaintiffs that: (a) the Company owned certain valuable exclusive licenses with Atari, Inc. and Hasbro, Inc.; (b) the Company's likelihood of success in certain litigation -- <u>Atari, Inc., Atari Interactive, Inc. and Hasbro, Inc. v. Games, Inc., Roger W. Ach II and Chicago West Pullman LLC</u>, SDNY Docket No 04 Civ. 3723 (JSR) (the "Atari Litigation") -- was very good; and (c) Plaintiffs' investment would be used to finance the Company's operations, acquire additional content and upgrade their systems.  Defendants failed to inform Plaintiffs or update the CPOM and Prospectus to state that, to the contrary:  (a) the Company had no such licenses from Atari and Hasbro and, indeed, this Court had enjoined them from claiming it did; (b) the Company had suffered a summary judgment against it in favor of Atari, Inc., Atari Interactive, Inc. and Hasbro, Inc. (together, "Atari") that threatens the existence of the Company; and (c) the Plaintiffs' funds were to be used to pay legal costs from the Atari Litigation.

## PARTIES

2.     Plaintiff John Schneller is an individual residing in Greenlawn, New York.

3.     Plaintiff Neal Goldman is an individual residing in New York City, New York.

4.      Plaintiff Endeavor is a New York limited partnership with a principal place of business in New York City, New York.

5.      Plaintiff Brad Butler, in his capacity as Trustee of the American High Growth Equities Retirement Trust, is an individual who performs his duties in New York City, New York.

6.      Plaintiff Larissa Friedenberg is an individual residing in Old Greenwich, Connecticut.

7.      Plaintiff James Irvine is an individual residing in Rumson, New Jersey.

8.      Plaintiff Edward Newman is an individual residing in Atlantic Highlands, New Jersey.

9.      Defendant Roger W. Ach, II, is an individual residing in Cincinnati, Ohio. At all times relevant to this Complaint, Mr. Ach was the President, Chief Executive Officer and Chairman of the Board of Directors of Games. Mr. Ach also beneficially owns approximately 39.76% of Games' outstanding common stock, either individually or through Chicago West Pullman LLC ("CWP"), of which he is the managing member and majority owner. Mr. Ach signed documents containing false and misleading statements described herein and participated in face-to-face and teleconferences with Plaintiffs. Mr. Ach is a "control person" of Games within the meaning of Section 20 of the Securities Exchange Act of 1934 ("Exchange Act").

10.     Defendant CWP is an Ohio Limited Liability Company with a principal place of business in Cincinnati, Ohio. On May 27, 2005, this Court issued a decision holding that CWP is under the complete dominion and control of Defendant Ach, and is his alter ego. The Court further stated that "based on the defendants' conduct in [that]

3

matter, that there is a realistic risk of [CWP] being used now simply as a device to defraud creditors." Accordingly, CWP should also be held liable to the Plaintiffs jointly and severally with Mr. Ach.

11.     Defendant Myles S. Cairns is an individual residing in Crescent Springs, Kentucky. At all times relevant to this Complaint, Mr. Cairns was the Senior Vice President, Chief Financial Officer and a Director of Games. Mr. Cairns also beneficially owns approximately 3.52% of Games' outstanding common stock. Mr. Cairns is a member of CWP. Mr. Cairns signed documents containing false and misleading statements described herein and participated in face-to-face and teleconferences with Plaintiffs. Mr. Cairns is a "control person" of Games within the meaning of Section 20 of the Exchange Act.

12.     Defendant Carol A. Meinhardt is an individual residing in Cincinnati, Ohio. At all times relevant to this Complaint, Ms. Meinhardt was the Executive Vice President, Chief Operating Officer and a Director of Games. Ms. Meinhardt also beneficially owns approximately 6.75% of Games' common stock. Ms. Meinhardt is a member of CWP. Ms. Meinhardt signed documents containing false and misleading statements described herein. Ms. Meinhardt is a "control person" of Games within the meaning of Section 20 of the Exchange Act.

13.     Defendant Thomas C. Joseph is an individual residing in Cincinnati, Ohio. At all times relevant to this Complaint, Mr. Joseph was a Director and shareholder of Games. Mr. Joseph signed documents containing false and misleading statements described herein. Mr. Joseph is a "control person" of Games within the meaning of Section 20 of the Exchange Act.

14.     Defendant Richard O. Coleman is an individual residing in Cincinnati, Ohio. At all times relevant to this Complaint, Mr. Coleman was a Director and shareholder of Games. Mr. Coleman signed documents containing false and misleading statements described herein. Mr. Coleman is a "control person" of Games within the meaning of Section 20 of the Exchange Act.

15.     Defendant George R. Blake is an individual residing in Atlanta, Georgia. At all times relevant to this Complaint, Mr. Blake was a Director and shareholder of Games. Mr. Blake signed documents containing false and misleading statements described herein. Mr. Blake is a "control person" of Games within the meaning of Section 20 of the Exchange Act.

16.     Defendant Edward J. Vonderbrink is an individual residing in Cincinnati, Ohio. At all times relevant to this Complaint, Mr. Vonderbrink was a Director and shareholder of Games. Mr. Vonderbrink signed documents containing false and misleading statements described herein. Mr. Vonderbrink is a control person of Games within the meaning of Section 20 of the Exchange Act.

17.     Defendant George M. Vredveld is an individual residing in Cincinnati, Ohio. At all times relevant to this Complaint, Mr. Vredveld was a Director and shareholder of Games. Mr. Vredveld signed documents containing false and misleading statements described herein. Mr. Vredveld is a control person of Games within the meaning of Section 20 of the Exchange Act.

18.     Defendant Games is a Delaware corporation with a principal place of business in Cincinnati, Ohio. Games is registered with the SEC and its stock is publicly traded.

## JURISDICTION AND VENUE

19.     This Court has jurisdiction and venue is proper in this Court pursuant to
Section 27 of the Securities Exchange Act of 1934 because this is the district where the
Defendants made the offers and sales upon which this Action is based.   This Court also
has jurisdiction under 28 U.S.C. § 1332 because there is complete diversity among the
parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

20.     All of the misrepresentations described herein were made to individuals in
the State of New York, and all of the investments upon which this Action is based were
solicited and/or made in New York City, New York.

## FACTS

21.     On or about February 14, 2005, Games issued a "Confidential Private
Offering Memorandum," ("CPOM") pursuant to which it offered for sale up to 40,000
Convertible Preferred Shares of Stock in the Company ("Units" or "Securities")) at a
price of $100 per Unit (the "Offering").  A true copy of the CPOM is attached as Exhibit
A.

22.     Upon information and belief, based upon the manner of conveyance to the
Plaintiffs herein and upon commonplace investment solicitation practices, the Defendants
caused the CPOM to be sent to prospective investors, including the Plaintiffs, by mail, e-
mail and hand delivery in New York City, New York and elsewhere.

23.     The Securities were unregistered and were purportedly offered to
accredited investors through an exemption from the registration provisions of the
Securities Act of 1933 ("Securities Act") and applicable state securities laws for
transactions not involving a public offering by an issuer, specifically, Section 4(2) of the

Securities Act and Rule 506 of Regulation D or Regulation S adopted by the Securities and Exchange Commission ("SEC").

24.     The CPOM nevertheless incorporated a Prospectus (the "Prospectus") that stated it was "part of a registration statement to be filed with the U.S. Securities and Exchange Commission."

25.     The Prospectus includes a signature page, executed by each of the individual defendants to this action, dated November 15, 2004, and it appears that the Prospectus was a revised and edited version of part of a Form SB-2/A, which Games filed with the SEC on November 22, 2004 (the "Form SB-2/A").

26.     In the Prospectus at page 7, Games held itself out as "a leading online media and value-added information service providing subscribers with access to entertaining proprietary content via the Internet."

27.     The Prospectus on page 7 specifically touted the Company's "three community-focused online game sites with exclusive licenses to widely-known 'classic games' from Hasbro™ and Atari™ that have been adapted for the Internet." (Emphasis added).

28.     The statement that the Company held exclusive licenses from Hasbro and Atari violates this Court's May 18, 2004 temporary restraining order and subsequent June 10, 2004 preliminary injunction in the Atari Litigation (the "Injunction"), which enjoined Games "from using, displaying, or publishing any of Hasbro's or Atari Interactive's intellectual property," and is identical to the statement cited by this Court in its March 11, 2005 Memorandum Order at pages 7 and 8 as violating its Injunction.

29.     Upon information and belief, based upon the facts that the Injunction was entered against Games in June 2004, approximately 8 months before the date of the CPOM, the importance to the Company of complying with this Court's Injunction, the individual Defendants' status as control persons of Games, and the other disclosures concerning the Litigation in the CPOM and Prospectus, the Defendants actually knew that the statement in the Prospectus claiming rights in Hasbro's and Atari's intellectual property was false, or, at minimum, Defendants recklessly disregarded the falsity of this statement.

30.     The Prospectus subsequently discloses that the Company is engaged in a dispute with Atari and Hasbro.

31.     The Prospectus states that "Games is prepared to pursue all legal remedies against Atari and its officers to effect its ownership of this property and these exclusive game rights." The Prospectus conveys the misleading impression that Games has the upper hand in the Atari Litigation.

32.     The Prospectus further states that "Games believes these are business issues that can be worked out between the parties although we are prepared to take steps to affirm our legal rights and any damages we may have sustained."

33.     The Prospectus nevertheless goes on to state, five paragraphs later, that the "Company's counsel believes that [Atari's] document production will expose Atari's bad faith and prove their breach of the implied obligation of good faith and fair dealing that inheres in every commercial contract."

34.     The Prospectus further represents that "The Company intends to vigorously prosecute and defend this action, we believe that ultimately, the Company will

prevail on its claim that Atari, Inc. breached the Asset Purchase Agreement and its

defense of Atari's claims." (Emphasis added).

35.     With regard to the proceeds of the Offering, the Prospectus represents that

they will be used for "general working capital and acquisition purposes." More

specifically, the Prospectus describes the use of proceeds as follows:

> The Company is seeking up to $5 Million in new equity capital to
> complete the acquisition of additional game content from Midway Games
> and Williams, and provide working capital to facilitate the conversion of
> "play-for-free" to a "play-for-pay" model and the[sic] expand distribution
> to the wireless web.

> Anticipated uses and priority for deployment of the $5 million:

> $1 million for Lottery lobby initiatives
> $1 million for successful launch of Games.com
> $2 million to expand into search and wireless content distribution
> $1 million to acquire additional branded content from Midway, Mattel and
> conversion of Cards.com to playing cards in association with World Poker
> Tour.

36.     The Prospectus further states with regard to legal proceedings:

> We, including our subsidiaries are periodically involved in incidental
> litigation and administrative proceedings primarily arising in the normal
> course of business. In our opinion, our gross liability, if any, and without
> consideration given to the availability of indemnification or insurance
> coverage, under any pending or existing incidental litigation or
> administrative proceedings would not materially affect our financial
> position, results of operations or cash flows.

37.     The Prospectus contains additional description of the Atari Litigation that

is revised and expanded in comparison to the description in the Form SB-2/A. Both

documents, however, represent that "Management has indicated that they believe the

Company will ultimately prevail on its claim that Atari breached the Asset Purchase

Agreement and its defense of Atari's claims."

38.     In the Prospectus, Games explicitly undertakes "[t]o file, during any period in which offers or sales of the securities are being made, a post-effective amendment to this registration statement to . . . [r]eflect in the prospectus any facts or events which, taken individually or together, represent a fundamental change in the information in the registration statement."

39.     By revising and editing the Form SB-2/A for use as the Prospectus for the Offering, while retaining the statements identifying it as a document filed with the SEC and the signature page dated November 15, 2004 containing the signatures of all of the individual Defendants, the Defendants conveyed a false and misleading impression about the nature of the Offering and the reliability of the Prospectus.

40.     The Prospectus further attaches a document which purports to be the Company's Report on Form 10-QSB for the period ending December 31, 2004 (the "Form 10-QSB"), signed and certified under Sarbanes-Oxley by Defendants Ach and Cairns.

41.     The Form 10-QSB provides information about the Atari Litigation up through February 17, 2005 (three days after the date on the face of the CPOM). Again in the Form 10-QSB, the Defendants represent that they expect a "favorable outcome," and that the "Company will ultimately prevail on its claim that Atari, Inc. breached the Asset Purchase Agreement and its defense of Atari's claims."

42.     The Form 10-QSB further purports to describe a certain CD-ROM produced by Atari in discovery and states: "The Company believes this discovery demonstrates that Atari committed purposeful breaches of trust in violation of the Asset Purchase Agreement. . . . . On January 12, 2005, in open court, [the Honorable Jed S.]

Rakoff stated that the CD-ROM (with certain changes) will be admitted into evidence in connection with the pending motions."

43.     On February 22, 2005, this Court entered summary judgment in the Atari Litigation against Games, Mr. Ach and CWPL in favor of Atari "in full."

44.     On February 23, 2005, this Court held a telephone conference with counsel.  Upon information and belief, based upon the docket entries and an interview of Atari's counsel, the Court informed the parties of its decision in the Atari Litigation no later than during this telephone conference.

45.     On February 24, 2005, this Court entered its decision in the Atari Litigation on the docket, along with a Memorandum Order explaining why it was dismissing Games' counterclaims and stating that a further Memorandum would issue shortly regarding the Court's decision to grant summary judgment to Atari.

46.     The entry of summary judgment against Games and in favor of Atari was a material change in the condition of the Company that a reasonable investor would take into account in deciding whether to invest in the Offering.

47.     The Judgment against Games threatens the Company's ability to remain in business.  Indeed, in Games' Memorandum of Law in Support of Motion for Stay of Enforcement of Amended Judgment Pending Resolution of Appeal, filed with the U.S. Court of Appeals for the Second Circuit on July 6, 2005, Games argued that it cannot even afford to post a bond in the full amount of the judgment without rendering itself "not able to function on an on-going basis," and asked the Court to permit a smaller bond to avoid irreparable harm to Games through the "destruction of [its] business."

48.     Upon information and belief, based upon the date of the Court's orders and telephone conference with counsel, upon counsel's professional obligation promptly to inform their clients of the Court's decision, and upon the Defendants' status as control persons who executed the documents described herein and purporting to describe the status of the litigation, the Defendants had actual knowledge of the Court's decision no later than February 23, 2005, and accordingly had actual knowledge of the falsity of the statements in the CPOM and Prospectus, or at minimum, acted with reckless disregard of their falsity.

49.     Upon learning of the Court's decision, the Defendants had a legal and contractual duty to disclose this material change in the Company's circumstances to the public through the Company's SEC filings and to the Plaintiffs in particular in connection with the solicitation of the Plaintiffs' investment in the Company.

50.     Defendants breached their duty to disclose this material change in the Company's circumstances.  At no time between the entry of the Court's decision and the closing of the Plaintiffs' investments in the Offering did the Company or any of the Defendants amend or update the CPOM, Prospectus or the Company's SEC Filings, or otherwise notify the public or any of the Plaintiffs of this material change in the Company's circumstances in comparison to Defendants' prior representations regarding the Atari Litigation.

51.     Indeed, although the Company issued other public announcements including press releases and filings with the SEC after the date that Defendants learned of the judgment against Games, the Defendants failed to disclose this material event, including in:

a.  Games's press release dated February 28, 2005 (touting the appointment of a new Chief Technical Officer);

b.  Games's press release dated March 9,2005 (touting the appointment of the former Ohio Lottery Director to lead their government lottery efforts);

c.  Games's Form 8-K filed March 14, 2005, signed by Mr. Ach; and

d.  Games's Form 8-K filed March 22, 2005, signed by Mr. Ach.

52.    Games's failure to disclose this material change in circumstances and update its SEC filings is particularly egregious with regard to the March 14, 2005 and March 22, 2005 Forms 8-K in light of this Court's March 11, 2005 Memorandum Order (the "March 11 Order").

53.    In the March 11 Order, this Court declined to impose sanctions on Games for violation of its previous Injunction through inaccurate statements regarding its ownership of the Games.com URL and exclusive licenses from Atari. The Court, however, clearly stated its "expectation that defendants will immediately update all filings and other public statements to conform with this decision." (Emphasis added).

54.    In reliance on the false and misleading statements contained in the CPOM, Prospectus and attachments, the Plaintiffs made the following investments in the Offering:

a.  On or about March 4, 2005, Endeavor invested $348,500;

b.  On or about March 4, 2005, Brad Butler, as Trustee, invested $25,000;

c.  On or about March 7, 2005, Edward Newman invested $50,000;

d.  On or about March 7, 2005, Neal Goldman invested $150,000;

e.  On or about March 7, 2005, Larissa Friedenberg invested $15,000;

f.  On or about March 17, 2005, James Irvine invested $30,000;

g.  On or about March 18, 2005, John Schneller invested $50,000;

h.  On or about March 18, 2005, James Irvine invested $20,000; and

i.  On or about March 18, 2005, Edward Newman invested $30,000.

55.    In making their investments, each of the Plaintiffs entered into a

substantively identical Purchase Agreement with Games, executed by Defendant Ach as

Games President and Chief Executive Officer (collectively, the "Purchase Agreement").

A true copy of a Purchase Agreement is attached hereto as Exhibit B.

56.    Among other things, the Purchase Agreement contained representations,

warranties and covenants that:

> 5.4. *Litigation.* **There is no action, suit or proceeding** before or by any
> court or governmental agency or body, domestic or foreign, now pending,
> or, to the knowledge of the Company, threatened against or affecting the
> Company or its subsidiaries **which might result in any material adverse
> change in the condition, financial or otherwise, or in the earnings,
> business affairs or business prospects of the Company** and its
> subsidiaries, taken as a whole, or which might materially and adversely
> affect their property or assets or which might materially and adversely
> affect the consummation of this Agreement and the other Documents.  All
> pending legal or governmental proceedings to which the Company or its
> subsidiaries is a party or of which any of their property or assets is the
> subject, including ordinary routine litigation incidental to the business, are,
> considered in the aggregate, not material to the business of the Company
> and its subsidiaries.
>
>      . . . .
>
> 5.5.    *Exchange Act Reports; No Material Misstatement or Omission.*
> The Company has filed all reports required to be filed by the Company
> under the Exchange Act for the twelve months preceding the date of this
> Agreement (or such shorter period as the Company was required by law to
> file such reports) (the foregoing materials being collectively referred to
> herein as the  "SEC Reports").  The Company has filed all SEC Reports on
> a timely basis or has timely filed a valid extension of such time of filing

and has filed any such SEC Reports prior to the expiration of any such extension. The Company has delivered to each Investor a true, correct and complete copy of all SEC Reports filed within the ten (10) days preceding the date hereof. As of their respective dates, the SEC Reports complied in all material respects with the requirements of the Securities Act and the Exchange Act and the rules and regulations of the Commission promulgated thereunder, and **none of the SEC Reports, when filed, contained any untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary in order to make the statements therein, in the light of the circumstances under which they were made, not misleading.** The financial statements of the Company included in the SEC Reports were prepared in accordance with GAAP applied on a consistent basis during the periods involved, except as may be otherwise specified in such financial statements or the notes thereto, and fairly present in all material respects the financial position of the Company and its consolidated Subsidiaries as of and for the dates thereof and the results of operations and cash flows for the periods then ended, subject, in the case of unaudited statements, to normal, year-end audit adjustments. All material agreements to which the Company or any Subsidiary is a party or to which the property or assets of the Company or any Subsidiary are subject are included as part of or specifically identified in the SEC Reports.

5.6.    *Press Releases*    **The press releases disseminated by the Company during the one (1) year preceding the date of this Agreement taken as a whole do not contain any untrue statement of a material fact or omit to state a material fact required to be stated therein or necessary in order to make the statements therein, in the light of the circumstances under which they were made, not misleading.**

5.7.    *No Material Change.* **Save as disclosed in the Company's Exchange Act Reports, the Company has not incurred any material liabilities or obligations, direct or contingent,** nor has the Company or its subsidiaries purchased any of their outstanding capital stock, nor paid or declared any dividends or other distributions on their capital stock; and there has been no change in the capital stock or consolidated long-term debt or any increase in the consolidated short-term borrowings (other than in the ordinary course of business) of the Company **or any material adverse change to the business, properties, assets, net worth, condition (financial or other), results of operations or prospects of the Company and its subsidiaries, taken as a whole.**

(Emphasis added).

57.     All of the representations, warranties and covenants quoted in paragraph 51 above were false when made because the entry of summary judgment against Games in the Atari Litigation was a material change in the Company's business, condition, liabilities, obligations and prospects, which had not been disclosed in the CPOM, Prospectus, Purchase Agreement, the Company's press releases or SEC filings as of the date the Plaintiffs executed the Purchase Agreement, all of which were rendered false and misleading by the omission of this material information.

58.     In its Form SB-2/A, filed with the SEC on April 7, 2005 ("April 7, 2005 Form SB-2/A"), after the closing of all of the Plaintiffs' investments, the Defendants at last revealed that: "In the matter of Atari, Inc. et al. v. Games, Inc., et al. 04 Civ. 3723, the Court granted Atari's pending motions for summary judgment and to dismiss."

59.     The April 7, 2005 Form SB-2/A also states in the "Use of Proceeds" section that the Company will need to raise funds to fund the Atari Litigation.

60.     In a Form 8-K filed May 24, 2005, Games describes the judgment against it as "a somewhat unique and peculiar summary judgment on several issues, which allows [Atari/Hasbro] to retain the assets they sold us, plus retain our cash and securities."

61.     In a press release dated July 1, 2005 and filed with the SEC through a Form 8-K (the "July 1 Press Release"), Games, Inc. acknowledged that the judgment against it equaled $5.1 million plus interest and meant that Atari had no obligation to convey any right or title to the intellectual property and games, including the URL games.com, which Games had been claiming as its own. In the July 1 Press Release, Games estimated its lost revenues from the games.com URL at $1.5 million per month, and asserted that it would claim those revenues as damages "if successful on Appeal."

62.     In the July 1 Press Release, Games also states that it had "notified Atari

that its Assets based on its most recent 10Q SEC filing that an enforcement action will

paralyze Games, Inc."[sic]

63.     If the Defendants had truthfully and accurately disclosed all of the

material information described herein, Plaintiffs would not have invested in Games.

64.     The securities the Plaintiffs purchased in reliance on the Defendants'

misrepresentations are unregistered and illiquid, and the Defendants' misrepresentations

induced a disparity between the transaction price and the true investment quality of the

securities at the time of the transaction.

65.     The Defendants' misrepresentations and omissions concealed the cause of

the Plaintiffs' losses:

      a.   Defendants misrepresented that Games owned exclusive licenses to

          widely-known 'classic games' from Hasbro™ and Atari™ that have

          been adapted for the Internet, and the fact that Games does not own

          such licenses greatly diminishes the value of the Company and the

          Plaintiffs' investments in it.

      b.   When Games suffered summary judgment in the Atari Litigation, it

          lost not only a substantial money judgment that threatens the

          Company's viability as a going concern, but also lost any claim to the

          valuable intellectual property owned by Atari and Hasbro.

          Defendants' misrepresentations and omissions concealed these

          Company problems, which greatly diminished the value of the

          Company and the Plaintiffs' investments in it.

c. When Defendants misrepresented that it would use the Plaintiffs' investments "to complete the acquisition of additional game content from Midway Games and Williams, and provide working capital to facilitate the conversion of 'play-for-free' to a 'play-for-pay' model and the[sic] expand distribution to the wireless web," they concealed the Company's lack of intellectual property rights and loss in the Atari Litigation, which greatly diminished the value of the Company and the Plaintiffs' investments in it.

d. At the time of the Plaintiffs' investments and prior to the Defendants' public disclosure of the truth, Games' common stock traded in a range between $.50 and $.70 per share. Since the Defendants disclosed the truth, the share price has dropped substantially. As of October 31, 2005, Games' common stock was trading for $.10 per share.

## COUNT I
## VIOLATION OF SECTION 10 AND RULE 10b-5 OF THE EXCHANGE ACT BY ALL DEFENDANTS

66.     Plaintiffs repeat the foregoing allegations as if fully set forth herein.

67.     The Defendants owed the Plaintiffs a duty to disclose all material information in connection with the Defendants' solicitation of the Plaintiffs' purchase of Games securities.

68.     As set forth above, all of the Defendants made material misstatements and misstatements by omission in the CPOM and Prospectus by failing to disclose the material change in the Company's circumstances that occurred on February 23, 2004 when this Court entered summary judgment against the Company in the Atari Litigation.

69.     As set forth above, all of the defendants made misstatements in the CPOM and Prospectus by misrepresenting the Company's ownership of "three community-focused online game sites with exclusive licenses to widely-known 'classic games' from Hasbro™ and Atari™ that have been adapted for the Internet," when they knew or should have known that this statement was not true and violated the Court's Injunction.

70.     As set forth above, all of the defendants made misstatements in the CPOM and Prospectus by misrepresenting the Company's intended use of proceeds, when they knew or recklessly disregarded that the Company intended to use the proceeds to finance the legal costs of the Atari Litigation.

71.     As set forth above, each of the Defendants knew or recklessly disregarded that these misstatements and omissions were false and misleading.

72.     The Plaintiffs reasonably relied on these misstatements and omissions in deciding to invest in Games.

73.     As set forth above, the Defendants' misrepresentations caused the Plaintiffs' losses.

74.     The Defendants are liable to the Plaintiffs for the losses they have suffered as a result of these misstatements and omissions.

## COUNT II
## CONTROL PERSON LIABILITY UNDER THE EXCHANGE ACT
## AGAINST THE INDIVIDUAL DEFENDANTS

75.     Plaintiffs repeat the foregoing allegations as if fully set forth herein.

76.     The individual defendants are control persons within the meaning of Section 20 of the Exchange Act.

77.    As set forth above, defendants did not act in good faith, and directly or indirectly induced the violations described herein.

78.    Defendants are jointly and severally liable to plaintiffs for the violations of federal securities law described above.

## COUNT III
## VIOLATION OF OHIO RS CHAPTER 1707 BY ALL DEFENDANTS

79.    Plaintiffs repeat the foregoing allegations as if fully set forth herein.

80.    Defendant Games maintains its principal place of business in the State of Ohio, and more than ten percent of its beneficial or record equity security holders are resident in the State of Ohio.

81.    Upon information and belief, the CPOM and Prospectus were prepared and issued from the State of Ohio.

82.    As set forth herein, the CPOM and Prospectus contained material misrepresentations and omissions upon which the Defendants relied and suffered losses as a result.

83.    Pursuant to Chapter 1707 of the Ohio Revised Code, the Plaintiffs' investment transactions are void, and the Defendants are jointly and severally liable to Plaintiffs for the full amounts of their investments plus all taxable costs.

## COUNT IV
## COMMON LAW FRAUD BY ALL DEFENDANTS

84.    Plaintiffs repeat the foregoing allegations as if fully set forth herein.

85.    As set forth with particularity above, Defendants made material misrepresentations to the Plaintiffs, with scienter, upon which the plaintiffs reasonably relied to their detriment

86.    Defendants are liable to the Plaintiffs for the losses the Plaintiffs have suffered as a result of Defendants' misrepresentations.

## COUNT V
## BREACH OF CONTRACT BY GAMES, INC.

87.    Plaintiffs repeat the foregoing allegations as if fully set forth herein.

88.    As set forth above, Plaintiffs made their investment in Games pursuant to a written agreement, which constitutes an enforceable contract between them and Games.

89.    Games has breached the contract and is liable to the Plaintiffs.

## COUNT VI
## UNJUST ENRICHMENT/RESTITUTION AGAINST GAMES, INC.

90.    Plaintiffs repeat the foregoing allegations as if fully set forth herein.

91.    Games was enriched at Plaintiffs' expense.

92.    It is against equity and good conscience to permit Games to retain such enrichment.

WHEREFORE, Plaintiffs respectfully request that the Court:

A.    Enter judgment in Plaintiffs' favor against defendants on all Counts of the Complaint;

B.    Order the Defendants to make full restitution of the Plaintiffs' investments;

C.    Order rescission of the challenged transactions;

D.    Award Plaintiffs compensatory and punitive damages, interest and costs; and

E.    Grant Plaintiffs such other and further relief as this honorable Court may deem just and proper under the circumstances.

## JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury.

Dated:  November 18, 2005

SHALOV STONE & BONNER LLP

By: _Ralph M Stone_ _____

Ralph M. Stone (RS-4488)

485 Seventh Avenue, Suite 1000
New York, New York 10018
Telephone: (212) 239-4340
Fax: (212) 239-4310

*Attorneys for Plaintiffs*

*Of Counsel*:

Thomas N. O'Connor (BBO #377185)
Sean T. Carnathan (BBO #636889)
David B. Mack (BBO # 631108)
QUIGLEY, O'CONNOR AND
CARNATHAN LLC
8 New England Executive Park, Suite 310
Burlington, MA  01803
Telephone: (781) 359-9000
Facsimile: (781) 359-9001